Louis G. CARRARO, Jr. *v.* DIRECTOR, Employment
Security Division

E 95-154                                          924 S.W.2d 819

Court of Appeals of Arkansas
Division III
Opinion delivered June 26, 1996

MELVIN MAYFIELD, Judge. Appellant, Louis G. Carraro, Jr., appeals a decision of the Arkansas Board of Review which found that he was discharged from his last work for misconduct connected with the work. The appellant is not represented by an attorney and neither party has filed a brief.

Appellant worked for Southwestern Bell for eighteen years. He was discharged for misconduct as a result of his refusal to follow the Employee Assistance Program's (EAP) recommendations under the Workplace Violence Policy.

At the Appeal Tribunal hearing, appellant, a supply attendant who delivered materials for Southwestern Bell, testified that he was asked to submit to EAP counselling because of a misunderstanding which occurred on January 3, 1995, when a co-worker told him to "get off my ass and do my job." Appellant said he came out of his

truck and told his co-worker that "I could rip his head off and shove it down his neck, for him to get away from me, our business was done." Appellant testified it was "just a figure of speech, how can you actually rip somebody's head off and shove it down their neck, it can't be done, I didn't threaten to kick his butt, I didn't threaten to shoot him or anything, you know it just came out of my mouth that way." Appellant's co-worker reported the incident and appellant's supervisor Russell Hannahs told him he was suspended.

Appellant testified that on January 9, 1995, Hannahs told him he would be fired unless he signed a document referred to as "attachment three" relating to EAP counselling. This untitled document is included in the record and is in essence a release. It asks whether appellant "intends to follow the recommendations of the EAP Counselor," and, if he agrees to follow the recommendations, whether he is "getting the help" he needs or is "completing the agreed upon plan of action." The document bears appellant's signature, but the signature line for the EAP Counselor is blank. Appellant testified that he read the document; that he had a union representative with him; that he did not know what the document meant; and that he did not know what he was signing; however, when he was told he would be fired unless he signed, he had no other choice but to sign.

Appellant said he went to counselling, and the counsellor asked inappropriate questions regarding whether he had been fondled, molested, or played with himself. He said he answered all her questions; that on January 10, she referred him to Dr. Owens; and that Dr. Owens asked the same inappropriate questions. Then Dr. Owens told appellant he did not need to see him any more, but appellant had to take a drug test. Appellant said he felt he had some constitutional rights "when it came to that"; that he had been asked a bunch of questions he should not have been asked; and he believed it was time to get his union involved and let them advise him on what to do. He said he told Dr. Owens he was going "straight to my union."

On January 11, 1995, the EAP counsellor called appellant and asked whether he had taken a drug test. Appellant said that he told her he was not refusing anything; that he needed to "let someone know what I need to do on this"; that he was waiting for the union to tell him what to do; and that he would get back to her.

On Friday morning, January 13, the counsellor called again and told appellant he had from 8 a.m. until 10 a.m. to take the test. Appellant said he told her again that he was not refusing to take the test, and he testified that he went to the union hall to ask what he should do and he was told to go home until "you hear from us." Appellant said he went straight home, and at 5 p.m. he received a call from the union telling him he'd been fired because he didn't "take that drug test" and asking whether there was any way he could take a drug test "right now."

Appellant testified that the next morning (Saturday) he went to his doctor's office and had a drug test and took it to the union hall. On Monday he returned to the union hall and was told he needed to go where "they wanted you to take the drug test to begin with." He said that he went and submitted to another test "which was my money" and that he went back to the union hall and gave it to them.

Appellant was fired on January 18, 1995, after a disciplinary hearing. Appellant said he did not inform the board that he had submitted to the test, but they would not let him say anything. He testified that he couldn't believe he was fired and had he been told he would be suspended or fired if he failed to take the test, he would have taken it "right then, immediately." He said the counsellor only said that if he did not take the test she would have "no alternative but to call Legal and say you refused," but nobody said anything about getting fired.

When asked whether he knew that if he didn't follow EAP recommendations he would be dismissed, appellant testified that he feels like he complied with the recommendations. He said that other than taking the drug test he complied one hundred percent. He said he did not refuse to take the test, the union told him to go to the house, and that is exactly what he did.

Russell Hannahs, the appellant's supervisor in material management, testified that he suspended the appellant on January 9, 1995, after another employee reported being threatened. Hannahs said that the employer has a workplace violence policy which states that violence or threats to another employee are prohibited and will be dealt with "accordingly"; that he held an investigatory interview with appellant; and that appellant admitted making the threat. Hannahs said he made the mandatory referral that appellant go to EAP

and follow their recommendations. On Friday evening (January 13) about 7 p.m., Francine Barton, the EAP counselor, called him at home and said appellant had not followed the recommendations given him by EAP, but she did not tell him what appellant failed to do, and he did not inquire. Hannahs said he notified his supervisor and appellant was terminated on January 18, 1995, for "failure to follow the recommendations of the EAP." Hannahs testified further that appellant knew he had to follow the EAP recommendations or be fired.

The Appeal Tribunal granted benefits on the basis that appellant did not willfully or intentionally violate a standard of behavior that the employer had a right to expect. It found that appellant's reliance on the union representative's advice was not unreasonable; that appellant's behavior was a judgment call and not misconduct.

The Board of Review reversed the findings of the Appeal Tribunal holding appellant was discharged for misconduct connected with the work for failure to comply with the recommendations of the employer's EAP. The Board held that appellant's failure to follow the recommendation within the specified time frame resulted in his discharge for willful disregard of the employer's interests, and the appellant's duties and obligations to the employer.

Arkansas Code Annotated § 11-10-514(a)(1) (Repl. 1996) provides that an individual shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work. However, as we explained in *Nibco, Inc.* v. *Metcalf & Daniels*, 1 Ark. App. 114, 613 S.W.2d 612 (1981):

> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

1 Ark. App. at 118, 613 S.W.2d at 614.

On review of unemployment compensation cases, the factual findings of the Board of Review are conclusive if they are

supported by substantial evidence; but that is not to say that our function on appeal is merely to ratify whatever decision is made by the Board of Review. *See Shipley Baking Company v. Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). As we said in *Shipley*, "We are not at liberty to ignore our responsibility to determine whether the standard of review has been met." 17 Ark. App. at 74, 703 S.W.2d at 467. When the Board's decision is not supported by substantial evidence, we will reverse. *Sadler v. Stiles*, 22 Ark. App. 117, 735 S.W.2d 708 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Industries Corp. v. Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981).

After reviewing the evidence, we cannot conclude the Board's finding of misconduct is supported by substantial evidence.

The employer stated that appellant was discharged for "failure to follow the recommendations of the EAP." But, appellant went to counselling with both the counsellor and Dr. Owens, and they both asked what he considered to be inappropriate questions. When Dr. Owens asked him to take a drug test, appellant felt his constitutional rights were threatened and told Dr. Owens he was going "straight to my union." Moreover, it is not disputed that appellant told the counselor he was not refusing to take the test; that he went to the union; and then went "straight home" on the union's advice. While appellant's reliance on the union's advice may have been ill-advised, we do not think this conduct was sufficient for reasonable minds to conclude that appellant's conduct exhibited "an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design."

We finally note that the untitled document referred to as "attachment three" states:

> I hereby relieve and release the Southwestern Bell Telephone Company, my employer if other than the Telephone Company, and the Southwestern Bell Telephone Company EAP personnel from any and all claims, judgements [sic], damages and causes of action arising out of, or in connection with the aforementioned release of information.

Arkansas Employment Security Law provides that "[a]ny agreement by an individual to waive, release, or commute his rights to benefits

or any other rights under this chapter shall be void." Ark. Code Ann. § 11-10-107(a) (Repl. 1996).

■ The decision of the Board of Review is reversed and remanded for the Board to allow appellant unemployment compensation.

Reversed and remanded.

STROUD and NEAL, JJ., agree.