Linda KILPATRICK *v.* DIRECTOR, Arkansas Employment
Security Department, and U.S.A. Drug

E 95-137                                                      934 S.W.2d 232

Court of Appeals of Arkansas
En Banc
Opinion delivered December 11, 1996

Appellant, *pro se.*

*Phyllis A. Edwards,* for appellee.

JOHN B. ROBBINS, Judge. Appellant Linda Kilpatrick appeals the Board of Review's denial of unemployment compensation benefits in accordance with Ark. Code Ann. § 11-10-514 (Repl. 1996) upon finding that appellant was discharged for misconduct in connection with the work. She argues that the decision is not supported by substantial evidence. We affirm.

We do not conduct a de novo review on the appeal of a decision of the Board of Review. The findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. Ark. Code Ann. § 11-10-529(c)(1) (Repl. 1996); *Perdix-Wang* v. *Director,* 42 Ark. App. 218, 856 S.W.2d 636 (1993). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

Mere inefficiency, unsatisfactory conduct, failure of good performance as a result of inability or incapacity, inadvertence, and ordinary negligence or good-faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless they are of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. *Shipley Baking Co.* v. *Stiles,* 17 Ark. App. 72, 703 S.W.2d 465 (1986).

In reaching its decision the Board noted the testimony of the employer's store manager, Jim Fletcher, who testified that appellant was a single mother with four children who had been cosmetic-department manager for approximately two years. During this period of time, he arranged her work schedule so that she did not have to work nights or weekends to accomodate her child care responsibilities. In August 1994 appellant was granted a medical

leave of absence with an understanding that she would return to work on October 31, 1994. Appellant neither returned to work nor contacted him on October 31, 1994. Approximately a week later appellant contacted him seeking her old job. He testified that he explained to her that he had hired someone else to fill the cosmetic-department manager position, but that he had another department manager position available. Appellant refused the other position. A few days later the new manager of the cosmetic department quit, so he contacted appellant. He testified that he explained to appellant that because of increased business all employees were now required to work additional hours, which meant that she would have to work an occasional night and weekend shift. He said that he no longer felt the need to accommodate the appellant's child care responsibilities because she had a live-in boyfriend.

While appellant's testimony was inconsistent with Mr. Fletcher's testimony in some respects, appellant testified that she worked occasional nights and weekends for approximately a month and a half. She then contacted the employer's district manager on Friday, January 6, 1995, and informed him that she could not work the hours she was scheduled. She was told that if she could not work the scheduled hours she was discharged.

■ The Board of Review found that appellant refused to work her scheduled hours and that she did not show that her work schedule violated the terms of her hiring agreement. It concluded that appellant's action of refusing to work the scheduled hours was a willful disregard of her employer's best interests and was, therefore, misconduct. From our review of the record, there is substantial evidence to support the Board's findings and decision. Therefore, we affirm the Board's decision that appellant was discharged from her last work for misconduct in connection with the work.

Affirmed.

PITTMAN and ROGERS, JJ., agree.

MAYFIELD, STROUD, and GRIFFEN, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I dissent from the majority decision in this case. The majority has found substantial evidence to support the decision of the Board of Review which held that appellant's inability to work nights and weekends was a willful disregard of the employer's best interest and was therefore miscon-

duct. In *Carraro* v. *Director*, 54 Ark. App. 210, 924 S.W.2d 819 (1996), we explained misconduct as it has been construed in unemployment insurance cases.

> Arkansas Code Annotated § 11-10-514(a)(1) (Repl. 1996) provides that an individual shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work. However, as we explained in *Nibco, Inc.* v. *Metcalf & Daniels*, 1 Ark. App. 114, 613 S.W.2d 612 (1981):
>
>> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.
>
> 1 Ark. App. at 118, 613 S.W.2d at 614.
>
> On review of unemployment compensation cases, the factual findings of the Board of Review are conclusive if they are supported by substantial evidence; but that is not to say that our function on appeal is merely to ratify whatever decision is made by the Board of Review. *See Shipley Baking Company* v. *Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). As we said in *Shipley*, "We are not at liberty to ignore our responsibility to determine whether the standard of review has been met." 17 Ark. App. at 74, 703 S.W.2d at 467. When the Board's decision is not supported by substantial evidence, we will reverse. *Sadler* v. *Stiles*, 22 Ark. App. 117, 735 S.W.2d 708 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Industries Corp.* v. *Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981).

54 Ark. App. at 214-15, 924 S.W.2d at 822.

After reviewing the evidence in the instant case, I cannot agree that the Board's finding of misconduct is supported by substantial evidence.

The opinion of the Board of Review states that the appellant had worked for U.S.A. Drug for over two years as manager of the cosmetics department. The opinion also states that the store manager, whom the opinion identifies as Jim Fletcher, testified that during that time he had assigned appellant work hours compatible with her having four children under ten years of age and no sitter and had arranged her schedule so she did not have to work nights or weekends. And the opinion states that Fletcher testified that, after a leave of absence for medical reasons, the appellant returned to work when he contacted her and offered her the job of manager of the same cosmetics department because the new manager of that department had quit. The opinion states that Fletcher told appellant that the business had increased, and she would have to work an occasional night and weekend shift. The opinion also states that Fletcher testified that during the week beginning January 9, 1995, the appellant did not report for work, and when she came in on January 13, 1995, to pick up her check, she told Fletcher that she had been fired by the district manager.

The Board's opinion goes on to state that the district manager, whom the opinion identifies as Walt Simpson, testified that on January 6, 1995, the appellant contacted him and said she was having difficulty working the scheduled hours because of her child-care responsibilities, and he told her that if she could not work the scheduled hours she was fired. And the opinion states that Simpson told her to work the following Monday and Tuesday to give the store manager an opportunity to replace her, and after the Tuesday shift, she was discharged.

The Board's opinion also states that the appellant testified that on Friday, January 6, 1995, she contacted the district manager informing him that she could not work the hours she was scheduled. She stated that he informed her that if she could not work the scheduled hours she was discharged.

I simply cannot agree that the above evidence, which the opinion of the Board sets out and relies upon, supports the Board's finding that "the claimant was discharged from last work for misconduct connected with the work."

Neither the Board nor the prevailing opinion in this evenly divided, three-to-three decision explains why the fact that the appellant's decision that her child-care responsibilities would not allow

her to work her scheduled hours constituted misconduct. Even if she erred in her evaluation of the situation, I submit that reasonable minds could not find that she was guilty of misconduct under the long-settled definition of that term as set out in the quote from *Carraro* v. *Director, supra.*

But the solution of this case involves more than deciding whether the evidence will support a finding of misconduct. The Employment Security Department denied benefits under Ark. Code Ann. § 11-10-513 (Repl. 1996) on the finding that the appellant voluntarily left her last work without good cause connected with the work.

The Appeal Tribunal found that the employer had previously made special work arrangements for appellant because of her child-care responsibilities, but the employer changed those arrangements when the appellant returned to work after a leave of absence, and the appellant was discharged because she could not work the new hours fixed by the employer. Based on this factual determination, the Appeal Tribunal made a determination that the appellant's inability to work the new hours was not an intentional or willful act against the interests of her employer under Ark. Code Ann. § 11-10-514 (Repl. 1996). Therefore, the Appeal Tribunal reversed the agency's determination and held that the appellant was entitled to benefits.

In determining the employer's appeal to the Board of Review, the Board considered only the Tribunal's decision on the misconduct issue. I think the Board should have considered the issue of voluntarily quitting work without good cause connected with the work and should have given specific consideration to the issue of voluntarily leaving work under that part of Ark. Code Ann. § 11-10-513(b) (Repl. 1996) (formerly Ark. Stat. Ann. § 81-1106(a) which provides as follows:

> (b) No individual shall be disqualified under this section if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification . . . .

There are a number of cases that have considered the above subsection. In *Wade* v. *Thornbrough, Comm. of Labor,* 231 Ark. 454, 330 S.W.2d 100 (1959), the Arkansas Supreme Court agreed with

the appellant's contention that the Commissioner of Labor applied the wrong section of the law and should have applied the above section. The court held that when Mrs. Wade's five children contracted measles and she quit work to care for them "she was confronted, in effect, with a personal emergency of such 'compelling urgency that it would be contrary to good conscience to impose a disqualification,' " and the court reversed and remanded for further proceedings consistent with its opinion. 231 Ark. at 457, 330 S.W.2d at 102.

In *Turner v. Daniels, Director*, 270 Ark. 418, 605 S.W.2d 465 (Ark. App. 1980), this court said that the Board of Review denied benefits under the above quoted subsection on the basis that the "claimant quit her job in order to take care of her son without taking the necessary steps to request a leave of absence or making reasonable efforts to 'preserve her job rights.' " This court held that while the record did not reflect that the claimant "specifically" requested a leave of absence there was a "substantial" compliance with that requirement and reversed the Board of Review.

In *Valentine v. Barnes, Acting Director*, 1 Ark. App. 308, 615 S.W.2d 386 (1981), the appellant had returned to work after having been off due to maternity leave. The very next day after returning to work, appellant advised her supervisor that the doctor had told appellant that her baby was sick and appellant needed to remain with the child for a "week or more." The supervisor told the appellant that he had to have someone to work in her place, and he was showing her as "terminated." The Board held appellant ineligible for benefits, and this court reversed on the finding that the evidence established that appellant was confronted with a personal emergency of such compelling urgency that it would be contrary to good conscience to impose a disqualification upon her.

And in *Rivers v. Stiles*, 16 Ark. App. 121, 697 S.W.2d 938 (1985), the appellant quit work because she was being physically abused by her husband; because she had to move out of the house in which they were living; and because she could not find another place to live, within her means, in the vicinity of the place of employment. The Board of Review found that marital difficulties did not constitute a "personal emergency," but this court did not agree and we remanded for the Board of Review to determine if the appellant had made reasonable efforts to preserve her job right.

In the instant case, I think this court should hold that the Board of Review's finding that the appellant was guilty of misconduct because of her inability to work the hours set by her employer upon her return to work is not supported by substantial evidence. Therefore, I would reverse the Board's decision, but I would remand for the Board to consider the issue of voluntarily quitting, and specifically to determine whether the appellant is entitled to benefits under Ark. Code Ann. § 11-10-513(b) (Repl. 1996).

In this connection, I would remind the Board that under the undisputed evidence the appellant was discharged by the district manager because she reported she could not work the hours scheduled by the store manager — even though he may have asked her to work two days and *then* be fired. And I would remind the Board that the appellant had the duty to make reasonable efforts to preserve her job rights but that the evidence must be viewed from a common-sense viewpoint and, after being fired by the district manager, appellant was not required to take useless action. *See Graham* v. *Daniels,* 269 Ark. 774, 601 S.W.2d 229 (Ark. App. 1980) (claimant not required to request alternative work when he had already been told there were no more openings); and *Oxford* v. *Daniels, Director,* 2 Ark. App. 200, 618 S.W.2d 171 (1981) (having been told that no other position was available to him, for appellant to make an effort to preserve his job rights would be a futile gesture).

Also, I would point out to the Board that the act providing for unemployment benefits "is remedial in nature and should be liberally construed to accomplish its beneficent purpose." *Graham, supra*; *see also Oxford, supra.*

Finally, I recognize that the appellant is *pro se* in this appeal and that in order for this dissent to have any possible effect on this case it would be necessary for the appellant to ask for review by the Arkansas Supreme Court. However, because I note that a representative of the Ozark Legal Services appeared at the hearing with the appellant, it may be that advice from that source may help the appellant to request review by the Arkansas Supreme Court.

I am authorized to state that Stroud and Griffen, JJ., join in this dissent.