Sondra O. CLARK *v.* DIRECTOR, Employment Security
Department, and Northwest Arkansas Radiation Therapy
Institute, Inc.

E 95-193                                         944 S.W.2d 862

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 4, 1997

*Stephen Lee Wood, P.A.,* by: *Stephen Lee Wood,* for appellant.

*Phyllis Edwards,* for appellee Phil Price.

*Cypert, Crouch, Clark & Harwell,* by: *Charles L. Harwell,* for separate appellee Robert Reyerson.

JOHN F. STROUD, JR., Judge. This is an employment security case in which appellant, Sondra Clark, was denied unemployment benefits because she was discharged for misconduct in connection with her work. The Appeals Tribunal denied appellant benefits for a period of eight weeks. The Board of Review denied benefits for a period of ten weeks, finding that the misconduct involved dishonesty. We affirm the Board of Review.

Appellant had been employed by appellee, Northwest Arkansas Radiation Therapy Institute, for more than nine years when she was discharged in February 1995. Her duties as a senior staff radiation therapist and clinical supervisor included taking and logging daily equipment readings on six machines. The readings numbered between 150 to 200 each day.

One of the machines monitored by appellant was used to deliver high energy radiation in the treatment of cancer patients. Appellant took twenty-one readings each day on this machine, including one with respect to the machine's water pressure. It was important that the readings not vary from day to day because any deviation from the normal operation of the equipment could affect the delivery of the radiation treatment, conceivably altering

the treatment outcome. Appellant had performed this task since October 1985.

On January 11, 1995, the water-pressure gauge on this machine was replaced by an engineer employed by NARTI. Prior to replacement, the old gauge had consistently read 60 p.s.i. The engineer performed a preventive maintenance inspection on the machine between January 23, 1995, and February 4, 1995. The inspection included a review of the logbook. In making the inspection, he noticed a discrepancy between the actual reading on the newly installed water-pressure gauge and the readings that were recorded in the log book. The new gauge measured 75-76 p.s.i., rather than the 60 p.s.i. that registered on the old gauge. However, appellant continued to record the readings at 60 p.s.i. She was terminated on February 14, 1995, for "falsifying records," an offense calling for immediate termination under NARTI's progressive discipline policy.

Appellant filed a claim for unemployment benefits. The Appeals Tribunal denied her benefits for a period of eight weeks, and the Board of Review denied her benefits for a period of ten weeks, finding that her misconduct involved dishonesty. On appeal to this court, appellant argues that the Board of Review's finding that she engaged in misconduct by intentionally falsifying company records was not supported by substantial evidence. We disagree.

On appeal, the Board of Review's findings of fact are conclusive if they are supported by substantial evidence. *Rucker v. Director*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Our review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

Arkansas Code Annotated section 11-10-514 (Repl. 1996) provides in pertinent part:

> (a)(1) If so found by the Director of the Arkansas Employment Security Department, an individual shall be disqualified for

benefits if he is discharged from his last work for misconduct in connection with the work.

. . .

(3) Except as otherwise provided in this section, disqualification for misconduct shall be for eight (8) weeks of unemployment as defined in § 11-10-512.

(b) If he is discharged from his last work for misconduct in connection with the work on account of dishonesty, . . . or willful violation of the rules or customs of the employer pertaining to the safety of fellow employees or company property, he shall be disqualified from the date of filing his claim until he shall have ten (10) weeks of employment in each of which he shall have earned wages equal to at least his weekly benefit amount.

As we pointed out in *Perry v. Gaddy*, 48 Ark. App. 128, 891 S.W.2d 73 (1995):

Mere inefficiency, unsatisfactory conduct, failure of good performance as a result of inability or incapacity, inadvertence, and ordinary negligence or good-faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless they are of such degree or recurrence as to manifest culpability, wrongful intent, evil design, *or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations.*

(Emphasis added.)

Here, the Board of Review could reasonably reach the decision it did based upon the evidence that was before it. There was substantial evidence to support the Board's finding that appellant was discharged for misconduct connected with the work on account of dishonesty. After the gauge was replaced and the new gauge consistently registered 75-76 p.s.i., appellant continued to chart the gauge readings at 60 p.s.i. Once the problem was brought to the employer's attention, the gauges and logs were monitored on a daily basis and compared to appellant's readings. The discrepancies between the actual readings and appellant's log entries constituted substantial evidence that appellant's actions surpassed those of mere misreadings to those of not reading the gauges at all and logging false numbers. Such misconduct demon-

strates an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations.

Affirmed.

PITTMAN, AREY, BIRD, and MEADS, JJ., agree.

NEAL, J., dissents.

OLLY NEAL, Judge, dissenting. I respectfully dissent from the majority's decision to affirm. The majority adequately set out the facts; however, there are a few that I believe merit additional discussion. Mel Cheney, the director of patient services, testified that an old gauge on one of the machines that appellant consistently charted as reading 60 p.s.i. was replaced with a gauge that consistently read 75 or 76 p.s.i. After installation of the new gauge, appellant, who had not been informed that the old gauge had been replaced, continued to chart that the gauge read 60 p.s.i. Cheney testified that once the discrepancy in the readings was brought to his attention, the readings charted on the particular gauge were monitored on a daily basis. According to Cheney, any deviation from the normal operation of the equipment could affect the delivery of the radiation treatment and alter the outcome of the patients' treatment as well as the safety of anyone working around the equipment. Although discrepancies in the readings were first noted in January, 1995, appellant was not made aware of the discrepancies until February 13, 1995, when she was placed on suspension and eventually terminated from her employment. The majority found that the facts support the Board's finding that the discrepancies between the log entries and actual readings demonstrate an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations, and support a finding of misconduct due to dishonesty. I disagree.

On review of employment compensation cases, the factual findings of the Board of Review are conclusive if they are supported by substantial evidence; but that is not to say that our function on appeal is merely to ratify whatever decision is made by the Board of Review. *See Carraro v. Director*, 54 Ark. App. 210, 924 S.W.2d 819 (1996). Further, we are not at liberty to ignore our responsibility to determine whether the standard of review has

been met. *Id.* When the Board's decision is not supported by substantial evidence, we will reverse. *Id.*

Arkansas Code Annotated § 11-10-514(a)(1) (Repl. 1996) provides that an individual shall be disqualified for benefits if he is discharged from his last work for misconduct in connection with the work. "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *Greenberg v. Director*, 53 Ark. App. 295, 922 S.W.2d 5 (1996); *George's Inc. v. Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995). However, as the court explained in *Carraro*:

> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertancies, ordinary negligence in isolated instances, or good-faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

54 Ark. App. 210, 924 S.W.2d 819 (1996).

It is my belief that the standard of review has not been met. In *Perry v. Gaddy*, 48 Ark. App. 128, 891 S.W.2d 73 (1995), we found that the employee's recurring negligence amounted to misconduct. There, the appellant had worked for her employer for twelve years; however, her error rating consistently exceeded the standard error rate during the years that preceded her termination. In addition, the appellant in *Perry* had been evaluated and warned of poor performance prior to her termination. I think it is of particular importance that although Cheney and others in management were aware that appellant's log of gauge readings was approximately 15 p.s.i. below the readings charted by other employees, appellant received no warning of poor performance prior to the decision to terminate. The facts indicate that simple negligence may be inferred from appellant's misreading of the gauges, but such negligence does not amount to an intentional or

substantial disregard of the employer's interests or of her duties or obligations.

Additionally, appellant read the gauge in question with Cheney looking over her shoulder, and charted the gauge as reading 65 p.s.i. Cheney testified that he made a mental note that he was reading the gauge at 75 p.s.i., and that he did not inform appellant of the discrepancy in the readings. I believe the fact that appellant charted a lower reading with her supervisor present belies the Board of Review's finding that her actions were the result of dishonesty.

For the reasons set forth above I would reverse.