Kirk RANKIN v. DIRECTOR,
Employment Security Department

E 03-51                                    120 S.W.3d 169

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered June 25, 2003

*Appellant*, pro se.

*Phyllis A. Edwards*, for appellee.

SAM BIRD, Judge. On July 3, 2002, this court handed down *Rankin v. Director*, 78 Ark. App. 174, 79 S.W.3d 885 *reh'g denied, review denied* (2002)(*Rankin I*), in which we reversed and remanded the Board's decision denying benefits to appellant pursuant to Ark. Code Ann. § 11-10-513 (Repl. 2002) because he had voluntarily left employment without good cause connected with the work. The rationale of our reversal was that because appellant, who was an inmate at the Arkansas Department of Correction (ADC) participating in a work-release program and assigned to Nucor Steel in Blytheville, was involuntarily transferred by ADC so as to render it impossible for him to continue in Nucor's employment, his reason for leaving his employment was not voluntary. Thus, we held that the Board's conclusion that appellant had voluntarily left his employment was not supported by substantial evidence. Our opinion concluded with the recita-

tion that the matter was reversed and remanded to the Board "for further proceedings consistent with this opinion."

Perhaps understandably, the Board took our recitation to mean that it was authorized to conduct further proceedings. After all, that is what our opinion said. On the other hand, it is not understandable how the Board could have reasonably interpreted our instruction to mean that it was authorized, *sua sponte*, to conduct a hearing for the purpose of determining if there was some other basis under Ark. Code Ann. § 11-10-513, aside from voluntarily leaving work, for denying benefits to the appellant. In the first place, such an interpretation is not consistent with our July 3, 2002, opinion. Secondly, although Ark. Code Ann. § 11-10-529(c)(2)(A) (Repl. 2002) authorizes this court to order that additional evidence be taken before the Board, we did not issue such a directive. Last, and perhaps most importantly, such an interpretation of our instruction contravenes the doctrine of the law of the case.

■ The doctrine of the law of the case provides that a decision of an appellate court establishes the law of the case for trial upon remand and for the appellate court itself upon subsequent review. *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002). The doctrine prohibits a court from reconsidering issues of law and fact that were decided or issues that could have been raised on appeal, and provides that such issues are conclusively adjudicated and can no longer be litigated by the parties. *Rainbolt v. Director*, 6 Ark. App. 204, 639 S.W.2d 532 (1982). We have held that the doctrine is applicable to administrative agencies generally and, specifically, to the Board of Review. *Id.*

Almost exactly the same thing that has occurred here was prohibited in *Rainbolt v. Director*, 6 Ark. App. 204, 639 S.W.2d 532 (1982) (*Rainbolt II*) under the doctrine of the law of the case. In *Rainbolt v. Director*, 3 Ark. App. 48, 621 S.W.2d 877 (1981) (*Rainbolt I*), the claimant appealed from the Board of Review's decision denying her unemployment benefits on the ground that she had voluntarily quit her job to accompany her spouse to a new place of residence but had not made an immediate entry and become available for suitable work in the new labor market. We reversed the Board's decision, holding that "the Employment

Security Division may be estopped to deny that appellant made an immediate entry into the labor market because of the apparent representations of its agent." We also remanded the case to allow the State an opportunity to present evidence in rebuttal to the claimant's estoppel defense.

We considered the remand appropriate in *Rainbolt I* because it was the first case in which the doctrine of estoppel had been applied to the State in a claim for unemployment benefits. However, upon remand, the Board, although receiving and considering the additional evidence that the State had presented on the issue of estoppel, concluded that the claimant was disqualified for benefits because she had quit her job for personal reasons, a basis of denial entirely different from the reason given for the denial originally. In reversing and remanding *Rainbolt II*, we said that our decision in *Rainbolt I* had become the law of the case and that issues other than estoppel were not open for consideration by the Board on remand because of the applicability of the doctrine of the law of the case. *Rainbolt v. Director*, 6 Ark. App. 204, 207, 639 S.W.2d 532, 534 (1982) (*Rainbolt II*).

■ Our holding in *Rainbolt II* is clearly controlling in the present case. *Rankin I* came to this court on the single issue of whether the appellant was disqualified for unemployment benefits because he had voluntarily left the employment without good cause connected with the work. We reversed, holding that there was no substantial evidence that appellant's departure from his job at Nucor Steel was voluntary. However, on remand, instead of awarding benefits, the Board of Review conducted a hearing on an entirely different issue. From the evidence at that hearing the Board of Review concluded that claimant was disqualified for benefits because of misconduct connected with the work. This was contrary to the law of the case as established by *Rankin I* and was, therefore, erroneous as a matter of law.

■ The concurring opinion of Judge Griffen has accused the majority of remaining silent about what he calls "flagrantly injudicious conduct" on the part of the Board of Review. We do not share this characterization of our declination to discuss the manner in which the Board proceeded. Under Ark. Code Ann.

§ 11-10-529(c)(1), in the absence of fraud, our review of the decisions of the Board of Review is limited to a determination of whether the Board's findings of fact are supported by the evidence and whether the Board has erred on questions of law. Our decision concludes that the Board's action was erroneous as a matter of law, and it sets forth the bases for that conclusion. Therefore, no purpose within our jurisdiction is served by launching into an intensive examination of the actions of the Board that apparently led to its error.

We also note Judge Crabtree's concurring opinion in which he agrees with our application of the doctrine of the law of the case to reverse the Board of Review, but he expresses his disagreement with *Rankin I*, decided by a three-judge panel of this court, that reversed the Board of Review's decision denying benefits to Rankin. Whether we now agree or disagree with the decision of the three-judge panel in *Rankin I* is simply not pertinent to the application of the doctrine of the law of the case. Even if the *Rankin I* decision was wrong (and some of the majority may believe that it was), when our decision in *Rankin I* became final, its conclusion that the Board of Review had improperly denied benefits to Rankin on the sole ground that he had voluntarily left his employment without good cause connected with the work became the law of the case. While the holding in *Rankin I* can be overruled in a future case, the doctrine of the law of the case precludes the Employment Security Department, the Appeals Tribunal, the Board of Review, and this court from considering any other basis upon which benefits could be denied to Rankin in this case.

In accordance with our decision in *Rainbolt II*, the proceedings of the Appeal Tribunal and the Board of Review on remand were improper. Therefore, this case is again remanded to the Board of Review with instructions to enter an award requiring the Employment Security Department to pay unemployment benefits to the appellant. Also, as we did in *Rainbolt II*, we direct the Board to certify the record of its decision to this court within thirty days from the date thereof.

Reversed and remanded.

VAUGHT and ROAF, JJ., agree.

GRIFFEN AND CRABTREE, JJ., concur.

HART, J., concurs separately.

WENDELL L. GRIFFEN, Judge, concurring. I join the decision to reverse the Board of Review and remand this case with explicit instructions that it enter an order awarding unemployment benefits to Rankin forthwith. However, I write separately because the majority opinion is silent about what I consider flagrantly injudicious conduct by the Board.

It is certainly accurate to state that our first *Rankin* opinion ended with the instruction that the Board conduct further proceedings "consistent with this opinion." Yet, that statement did not license the Board to defy the law of the case, undertake a unilateral investigation for witnesses to testify on behalf of the unrepresented employer, raise a spurious allegation that Rankin was discharged from his employment because of misconduct, and then render a finding of misconduct contrary to all the proof so it could again deny Rankin unemployment benefits. The majority opinion by Judge Bird and concurring opinion by Judge Crabtree reach the proper result but disregard the flagrantly improper conduct by the Board. I refuse to turn a blind eye to it, nor will I be silent about it.

The history of this claim was set forth in our July 3, 2002 three-member-panel opinion that reversed and remanded the Board of Review's decision to deny Rankin's claim for unemployment benefits. *See Rankin v. Director*, 78 Ark. App. 174, 79 S.W.3d 885 (2002). While an inmate at the Arkansas Department of Correction, Rankin took part in a work release program wherein he was employed by Ready Temps Employment, LLC, and placed by that firm to work at the Nucor-Yamato Steel Mill located near Blytheville, Arkansas. When the Department of Correction transferred Rankin to its Brickeys Unit for his eventual parole, he was no longer allowed to participate in the work-release program. Rankin filed for unemployment benefits. Although the Employment Security Department's hearing officer found that Rankin had no choice in his removal from the work-release program, she concluded that he "voluntarily left his last work without good cause connected with the work." The Board of Review affirmed and adopted that

decision. Our previous opinion reversed the Board's finding that Rankin voluntarily left his last employment as defined by Ark. Code Ann. section 11-10-513; we held that the finding was not supported by substantial evidence. The final sentence of the opinion authored by Judge Jennings reads: "We therefore reverse and remand this case to the Board of Review for further proceedings consistent with this opinion."

On remand, the Board of Review did not direct the Department to pay benefits. Rather, the Board, acting on its own instance and without petition from or involvement by the employer (Ready Temps), conducted a second evidentiary proceeding from which issued another decision on January 31, 2003. That decision again affirmed the Department's determination that Rankin was disqualified from receiving unemployment benefits, albeit based on a "modified" finding "that [he] was discharged from last work for misconduct connected with the work." Rankin now raises a *pro se* appeal from the second adverse ruling by the Board and argues that it lacks substantial evidence.

At the outset, I confess that the Board's action in conducting another evidentiary hearing on remand to determine whether to reimpose its earlier decision to deny benefits on the ground of misconduct is disquieting. When Rankin first appealed the denial of his claim by the Department, the Appeal Tribunal order recites that the issue was "Whether the claimant voluntarily left, was discharged, or suspended from last work and whether the circumstances of the separation entitle the claimant to benefits in accordance with Ark. Code Ann. § 11-10-513 *or* § 11-10-514." (Emphasis added). Arkansas Code Annotated section 11-10-513 provides that persons who voluntarily leave their last employment without good cause connected with the work are disqualified from receiving unemployment benefits. Arkansas Code Annotated section 11-10-514 provides that persons discharged from their last employment because of misconduct are disqualified from receiving unemployment benefits. The record associated with Rankin's first appeal indicates that the employer did not participate in the December 11, 2001 hearing by the Appeal Tribunal that led to the original finding that "the claimant voluntarily left last work without good cause connected with the work." Until our previous decision,

Ready Temps had not entered an appearance before the Appeal Tribunal or the Board of Review to argue or prove that Rankin was discharged from employment, let alone for misconduct.

According to the "Hearings and Appearances" section of Board of Review opinion following our remand, "a telephone hearing was conducted before the Board of Review on November 5, 2002. The claimant testified in his own behalf. *The listed employer was not represented, although notice was mailed to its last known address. Warden Joe Porchia, Center Supervisor at the Mississippi County Work-Release Center for the Arkansas Department of Correction, testified at the Board's request.*" (Emphasis added). Thus, it is clear that instead of entering an order directing the Department to pay unemployment benefits to Rankin consistent with our previous decision, the Board of Review conducted another hearing to examine the already unproven misconduct ground for denying benefits.

The record of the proceeding on remand reveals that on October 25, 2002, the Board of Review mailed a "Notice of Telephone Hearing" to Rankin and Ready Temps about a hearing scheduled on November 5, 2002, at 9:00 a.m. Copies of the notice were mailed to the local ESD office, to Joe Porchia, Warden at the Mississippi County Work Release Center, and to Mark Colbert, Attorney for the Arkansas Department of Corrections, as well as to our court. The hearing notice also states:

> Pursuant to a remand by the Arkansas Court of Appeals (E 02-40), the Board of Review directs that additional evidence be taken in further hearing. The primary issue involved is: Whether the claimant was discharged or suspended from last work and whether the circumstances of the separation or suspension entitle the claimant to benefits under Ark. Code § 11-10-514.

> The parties are notified that the hearing may involve any questions having a bearing on the claimant's right to benefits up to the time of the hearing. The claimant's and the employer's testimony will be taken by a staff attorney at the date and time indicated below.

The November 5, 2002 telephone hearing was conducted by T. Kevin O'Malley, a Staff Attorney for the Board of Review. Rankin appeared on his own behalf. The employer did not par-

ticipate. Warden Porchia of the Mississippi County Work Release Center testified at the request of the Board of Review. The record of that telephone hearing contains the following preliminary statement by Staff Attorney O'Malley.

> This hearing is being conducted as a result of a remand from the Arkansas Court of Appeals. The, a little short history here: The Arkansas Appeal Tribunal, on December the 12th, 2001, issued a determination denying Mr. Rankin benefits under Arkansas Code Annotated §11-10-513 on the finding that he voluntarily left last work without good cause connected with work. The Arkansas Board of Review, where I am, on January the 25th, 2002, affirmed the Appeal Tribunal decision and Mr. Rankin was disqualified from benefits. Mr. Rankin subsequently filed an appeal to the Arkansas Court of Appeals, and the Court of Appeals, on July the 3rd, 2002, reversed the Board of Review decision and remanded it to the Board. How did they put it? "We therefore reverse and remand this case to the Board of Review for further, for further proceedings consistent with this opinion." And in the Court of Appeals opinion, it held that, "it follows that the Board's finding that Mr., that Rankin voluntarily left his last work is not supported by substantial evidence."

> *So they said he was, you didn't voluntarily leave last work and that they wanted us to take another look at this case. So that apparently leaves us with the position that if you didn't, if he didn't voluntarily quit, he must have been discharged, since they didn't say otherwise, and Mr. Rankin did file a motion for clarification. I don't have that specific date down, but that motion was denied, and so we are here today . . . to take more testimony concerning why Mr. Rankin was no longer employed by the Yamato Steel. . . . Nucor-Yamato Steel, and he was employed by Ready Temps Employment, but they're no longer in business and they have not responded to the Notice of Telephone Hearing, and the only person we could figure out might have some information about this was Joe Porchia, the warden at the Mississippi County Work-Release Center, besides Mr. Rankin. So we've contacted Warden Porchia, and he is going to present testimony that he's aware of concerning the circumstances of this case. So the procedure we're going to follow, because this is somewhat of an unusual situation here, . . . normally in a discharge, the employer tells why the employer was discharged, why they're no longer working there. However in this case, we don't have an employer here, . . . . (Emphasis added.)*

The Board of Review's January 31, 2003 decision following our remand sheds additional light on why it deemed another evidentiary hearing necessary after we reversed its first decision denying Rankin's claim for benefits. At Page 2 of the decision, one reads the following statement:

> To comply with the Court's opinion, the Board conducted a hearing pursuant to its discretionary authority under Arkansas Code Annotated § 11-10-525, to take additional evidence concerning the circumstances of the separation. The Board deemed the additional hearing necessary because the evidence previously obtained by the Department and the Tribunal was relevant to the question of whether the claimant quit the employment, pursuant to Ark. Code Ann. § 11-10-513; no evidence had been adduced on the issue of a discharge and whether or not the discharge was due to misconduct connected with the work, pursuant to Ark. Code Ann. § 11-10-514. *This approach was tacitly approved by the Court when it denied the claimant's motion to clarify on October 23, 2002.* (Emphasis added.)

The assertion that our court "tacitly approved" another evidentiary hearing regarding misconduct on remand is unfounded. We denied Rankin's motion to clarify our July 3, 2002 decision for several reasons. First, we do not issue advisory opinions. Second, the motion to clarify was filed outside the time period for a petition for rehearing. Furthermore, the motion to clarify was not a petition for rehearing in any event because it did not allege any legal error in our original decision. We did not have jurisdiction to direct the Board of Review about anything once our mandate was issued. Acting consistent with these realities did not amount to our approval, tacit or otherwise, of anything the Board of Review did on remand that was not "consistent with" our original decision reversing the denial of benefits.

Furthermore, Ark. Code Ann. § 11-10-525, the provision cited by the Board of Review as authority for conducting the second hearing on remand, does not authorize the Board of Review to disregard an appellate court decision reversing the Board's decision to deny benefits and remanding for "further proceedings consistent with this opinion," nor does the statute empower the Board to conduct an exercise aimed at finding another way around

awarding Rankin's unemployment benefits on remand from our previous decision. Our previous opinion clearly did not remand the case to the Board with instructions that it make additional findings regarding the employment separation, nor did it even suggest that further evidence on the employment separation should be taken and adjudicated before benefits could be paid.

Yet, the record provides clear proof that the November 5, 2002 telephone hearing amounted to an evidentiary proceeding for that specific purpose. The hearing was scheduled although the employer did not request it, did not attend it, and had gone out of business. When he outlined what would happen after the telephone hearing on remand, Staff Attorney O'Malley stated:

> When we're finished with questions and answers, . . . I will give each of you [Rankin and Porchia] the opportunity to make a closing statement, and then we will close the record. . . . The Board will make its decision. This decision will be mailed out to the parties. Whoever is disfavored by the decision, *and I guess the only person that could be disfavored, Mr. Rankin, would be you, especially since Ready Temps no longer is in business. . . . If, if the decision's not favorable to you, you will have appeal rights to the Arkansas Court of Appeals.* (Emphasis added.)

O'Malley's statement demonstrates that the Board fully realized that its exercise could only adversely affect Rankin.

The Board of Review had no basis to conduct a second evidentiary proceeding on remand to determine whether Rankin was disqualified from receiving benefits due to misconduct. Our first decision was the law of the case on the separation. The Department and employer had the chance to argue and prove misconduct before the first appeal. Ready Temps did not cross-appeal from the Board's first decision denying benefits to argue that the Board should have also found Rankin disqualified due to misconduct. Our remand order "for further proceedings consistent with this opinion" did not countenance additional evidentiary hearings surrounding the employment separation. It certainly did not intimate that the Board was authorized to undertake a second analysis aimed at disproving Rankin's unemployment claim.

The Board's hearing officer declared, and the Board's January 31, 2003 opinion states, that the Board contacted Warden Porchia. What the Board's opinion does not disclose, yet what is unmistakable from the record of the November 5, 2002 telephone hearing, is that Warden Porchia was allowed to question Rankin. The hearing officer acknowledged that the Arkansas Department of Corrections was not the employer. Nevertheless, after Rankin was examined by the hearing officer, the hearing officer said to Porchia: "Warden Porchia, any questions to Mr. Rankin?" Porchia then questioned Rankin about the events surrounding his (Rankin's) reassignment by the Department of Corrections from work-release status. This was the same controversy that led to the first appeal and our previous decision. The hearing officer did not explain why Porchia, a nonparty, was allowed to interrogate Rankin. The Board's opinion is mysteriously silent on this "unusual" development. Neither the majority opinion nor the concurring opinion by Judge Crabtree mention this blatant deviation from the process commonly understood to be fair.

Thus, the Board not only instigated the hearing on remand; it also took the highly unusual step of finding a witness (Warden Porchia) from whom it elicited testimony aimed at defeating Rankin's claim on the purported ground that he was discharged because of misconduct. Then the Board allowed that witness to function as Rankin's adversary for the purpose of cross-examination. To this extent, at least, I agree with Staff Attorney O'Malley that "this is somewhat of an unusual situation . . . ."

Plainly, the Board's "modified finding" on remand that Rankin "was discharged from last work for misconduct connected with the work" is not supported by substantial evidence. We have stated the legal standard required to establish misconduct under Ark. Code Ann. § 11-10-514 countless times. Misconduct for the purposes of unemployment compensation involves: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of its employees; and (4) disregard of the employee's duties and obligations to the employer. *Greenberg v. Director*, 53 Ark. App. 295, 922 S.W.2d 5 (1996). To constitute misconduct, there must be more than mere inefficiency, unsatis-

factory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith error in judgment or discretion; there must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Carraro v. Director*, 54 Ark. App. 210, 924 S.W.2d 819 (1996).

No proof in the record before us remotely approaches this standard. No witness testified and no other evidence was introduced, either at the appropriate hearing leading to the first appeal or the unauthorized and unwarranted hearing following remand, that Rankin was discharged, let alone due to misconduct. No evidence was introduced, including the testimony by Warden Porchia that is mentioned in the Board of Review decision, about any Ready Temps policy, directive, instruction, or command violated by the claimant. There is no proof whatsoever supporting the Board's finding on remand that "the claimant's failure to seek permission from Nucor-Yamato to change his work schedule in order to allow his participation in the SATP [Substance Abuse Treatment Program] program was misconduct." Nucor-Yamato was not the employer. There was no proof that Rankin was required to obtain permission from Ready Temps before he could apply for the Substance Abuse Treatment Program, let alone proof that he was discharged because he did not obtain it.

Like Minerva, the Roman goddess of wisdom who sprang full-grown from Jupiter's head, the contention and conclusion on remand that Rankin was discharged and that the discharge resulted from misconduct sprang full-bodied from the mind and effort of the Board of Review. However, what the Board did was neither wise nor fair. Simply put, the Board of Review was wrong to disregard our directive on remand. It also was wrong about having statutory authority to conduct the second evidentiary hearing, and equally wrong in believing that we "tacitly approved" that exercise. It was not only unusual, but was highly improper for the Board to essentially become surrogate counsel for the employer, find Warden Porchia, invite him to the November 5, 2002 hearing, while also purporting to act as impartial arbiter of the facts. Finally, the Board committed reversible error when it found that

Rankin was discharged due to misconduct absent proof that he had been discharged for any reason and in the face of our previous decision. The fact that the Board sought out Warden Porchia, apparently determined that he possessed information it unjustifiably considered pertinent concerning Rankin's separation from employment, accorded Porchia treatment otherwise provided the employer or its designated representative, and then issued a "modified finding" favoring the absent employer with no proof of anything constituting misconduct, could cause some observers to deem the Board's process on remand prejudiced against Rankin and biased in favor of his former employer.[1]

Rankin has endured almost a year of unnecessary and unjustified delay in receiving unemployment benefits the Board should have ordered paid after our July 3, 2002 decision. That delay must end forthwith.

TERRY CRABTREE, Judge, concurring. I concur in the reversal of the Board's decision and join the opinion authored by Judge Bird. However, I write separately to express my disapproval of this court's initial decision in *Rankin v. Director*, 78 Ark. App. 174, 79 S.W.3d 885 (2002) (*Rankin I*).

Based on the evidence before us, in *Rankin I* we held that the claimant could not be said to have "voluntarily" quit his job because he had "no choice in the matter" of being removed from the work-release program. I disagree with that conclusion because it glosses over the reality that the appellant was employed while an inmate in prison.

The public policy behind our Employment Security Act is to benefit persons unemployed *through no fault of their own*. Ark. Code Ann. § 11-10-102(3) (Repl. 2002). Thus, our law provides that an individual is disqualified for benefits if he left his last work voluntarily and without good cause connected with the work.

---

[1] *See* Canon 3(B)(5) of the Arkansas Code of Judicial Conduct. Canon 3(B)(5) states: A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, . . . and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

The appellant, of his own volition, committed an act prohibited by the penal laws of this State and was thus imprisoned as a consequence of his own actions. While in prison, he was necessarily subject to the rules established by the prison authorities. As a matter of grace and privilege, he was allowed to participate in the work-release program. By rule, he was later denied that privilege. In my view, appellant voluntarily placed himself in a position where his choices were dictated by others. In keeping with the stated purpose of the Act, I would conclude that appellant's separation from the work-release program was "voluntary."

Although I disagree with it, I am bound by our decision in *Rankin I.* Therefore, I concur in today's decision.